A. P. LUCIANO, AKA TONY LUCIANO, ANTHONY P. LUCIANO, APPELLANT, v. WILLIAM C. DIERCKS, AKA WM. C. DIERCKS AND VIRGINIA DIERCKS AND IAMA CORPORATION, RESPONDENTS.

No. 12063

December 30, 1981                                   637 P.2d 1219

*Clark & Zubel,* Las Vegas, for Appellant.

*John Peter Lee* and *Richard McKnight,* Las Vegas, for Respondents.

---

[2]The Chief Justice designated THE HONORABLE DAVID ZENOFF, Senior Justice, to sit in the place of THE HONORABLE CAMERON BATJER, Justice. Nev. Const., art. 6, § 19; SCR 10.

## OPINION

By the Court, ZENOFF, SR. J.:[1]

This appeal arises from an agreement by appellant Anthony P. Luciano to purchase respondents' interest in the lease of a restaurant. The district court issued a writ of restitution restoring the premises to respondents, the Diercks and IAMA Corp., and entered a money judgment of $20,500 in respondents' favor.[2] Because we are unable to determine the factual basis for the money judgment, we reverse and remand.

Respondents leased a restaurant from College Park Realty Company. On October 14, 1977, appellant entered into an agreement to purchase respondents' interest in the lease. In addition to making payments under the master lease, appellant was to pay respondents $110,000 for the remaining 15-year term of the lease. This price included purchase of the restaurant's furniture and equipment. The $110,000 was payable as follows: $5,000 upon execution of the sublease agreement; $15,000 upon respondents' obtaining the consent of College Park to the sublease and the necessary business and liquor licenses; and $5,000 three months after obtaining the necessary licenses. The remaining $85,000 was to be paid in monthly installments of $1,500.

Appellant made the initial $5,000 down payment and took possession of the premises in late October 1977. In addition, he made the monthly payment of $1,500 for each of the six months he was actually in possession. However, appellant withheld the remaining down payments of $15,000 and $5,000 because of a dispute between respondents and College Park

---

[1]The Chief Justice designated THE HONORABLE DAVID ZENOFF, Senior Justice to sit in the place of THE HONORABLE CAMERON M. BATJER, Justice. Nev. Const., art. 6, § 19; SCR 10.

[2]Appellant has not appealed from the order granting the writ of restitution.

regarding the remaining period of their lease. Apparently, College Park was claiming that the lease terminated in 1983 rather than in 1993. If true, this would have reduced the sublease from 15 to five years.

On December 12, 1977, appellant commenced an action against respondents for specific performance of the sublease or, in the alternative, for reformation of the agreement. Appellant claimed that respondents had failed to secure College Park's consent to the 15-year term contemplated by the sublease.[3] Respondents counterclaimed for restitution of the premises.

On May 2, 1978, the case came on for trial. No evidence was taken, however, because respondents produced College Park's written stipulation to extend the lease to 15 years, the relief appellant had sought in his complaint. Claiming surprise, trial counsel for appellant moved for a continuance. Half an hour later a conference was held between court and counsel in which appellant moved to amend his complaint to seek rescission. The record does not reflect the reason for appellant's sudden change of position.

By an order dated May 5, 1978, the district court granted appellant leave to amend his complaint, but also ordered him to pay the $20,000 due under the agreement. Appellant failed to make the $20,000 payment, and on May 26, 1978, the district court issued a writ of restitution restoring the premises to respondents and entered judgment against appellant in the amount of $20,500.[4] Appellant has appealed from the money judgment.[5]

Appellant contends that the district court committed reversible error by failing to make specific findings of fact and conclusions of law. In all actions tried without a jury, the district court must make such findings. NRCP 52(a). However, this court will imply findings of fact and conclusions of law so long as the record is clear and will support the judgment. Griffin v.

---

[3]The complaint also alleged that respondents had committed fraud by representing that they owned the restaurant's furniture and equipment.

[4]The additional $500 was for common area charges relating to the leased premises.

[5]Appellant previously petitioned this court for a writ of mandamus vacating the money judgment and directing the sheriff to return certain of his personal property which had been seized under a search order. In Luciano v. Marshall, 95 Nev. 276, 593 P.2d 751 (1979), this court granted the writ in part, ordering the sheriff to return appellant's personal property. We held that the district court had jurisdiction to enter the money judgment, without purporting to address its correctness, which is at issue here.

Westergard, 96 Nev. 627, 615 P.2d 235 (1980); Gorden v. Gorden, 93 Nev. 494, 569 P.2d 397 (1977).

The money judgment in question reflects the down payment of $20,000 which, if made prior to restitution, would have entitled appellant to remain in possession of the leased premises. As the record exists, we are unable to determine upon what basis the district court could require appellant to quit the premises and also make the $20,000 down payment.[6]

Where, as here, the record does not clearly support the judgment, our usual practice is to remand the case for entry of findings of fact and conclusions of law. *See, e.g.,* Noble v. Noble, 86 Nev. 459, 470 P.2d 430 (1970); Pease v. Taylor, 86 Nev. 195, 467 P.2d 109 (1970). In this case the intervening death of the district judge who entered the judgment precludes the use of this approach. Accordingly, we reverse and remand for a trial.[7]

GUNDERSON, C. J., and MANOUKIAN, SPRINGER, and MOWBRAY, JJ., concur.

---

[6]At oral argument, counsel for respondents stated that trial counsel for appellant had stipulated, in open court, to pay the $20,000 as a prerequisite to being allowed to amend the complaint. Counsel for respondents then referred this court to pages 262-273 of the record on appeal. Our review of the record reveals no such stipulation.

[7]Present counsel did not represent respondents in proceedings below.